IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

MID-CONTINENT CASUALTY §
COMPANY, §
 §
Plaintiff, §
 § Civil Action No. 3:06-CV-1576-D
VS. §
 §
ELAND ENERGY, INC., et al., §
 §
Defendants. §

MEMORANDUM OPINION
AND ORDER

Defendants Eland Energy, Inc. and Sundown Energy LP (collectively, "Sundown") object to the magistrate judge's July 16, 2007 orders denying Sundown's motion to compel ("Compel Order") and granting plaintiff Mid-Continent Casualty Co.'s ("Mid-Continent's") motion to file a surreply to Sundown's motion to compel ("Surreply Order"). Sundown also moves for leave to file a third amended counterclaim[1] to allege an additional count of breach of contract and bad faith. For the reasons that follow, the court affirms the magistrate judge's orders and grants Sundown leave to file a third amended counterclaim.

I

These consolidated cases involve an insurance dispute arising from oil spills at Sundown's Port Sulphur, Louisiana facility

---

[1] Sundown characterizes this pleading as a third amended complaint in No. 3:06-CV-1578-D and as a third amended counterclaim in No. 3:06-CV-1576-D. Because these two cases have been consolidated under No. 3:06-CV-1576-D, the court will refer to the pleading by its proper title: third amended counterclaim.

caused by Hurricane Katrina and Hurricane Rita. Sundown was insured by Mid-Continent under a $1 million primary policy and a $5 million excess insurance. Five spill-related lawsuits have been filed against Sundown ("Underlying Litigation"). In 2006 Mid-Continent filed a declaratory judgment action and a claim for reimbursement of certain attorney's fees. In 2007 Sundown sued Mid-Continent for breach of contract, breach of various insurance statutes, and breach of duty of good faith and fair dealing. The two lawsuits have been consolidated.

The objections to the magistrate judge's orders relate to Sundown's motion to compel production of four categories of documents. When Sundown filed its reply to this motion, it also moved to file in support of its reply a supplemental appendix under seal. Mid-Continent moved for leave to file a surreply and an appendix under seal. Sundown responded in opposition to Mid-Continent's motion. In its response, it requested that if Mid-Continent was allowed to file a surreply, it be given permission to respond.

On July 16, 2007 the magistrate judge issued the Compel Order, denying Sundown's motion to compel, and the Surreply Order, granting Mid-Continent's motion to file a surreply. On July 30, 2007 the magistrate judge granted Sundown's motion to file a supplemental appendix under seal. Sundown objects to the Compel Order and the Surreply Order on several grounds.

Sundown separately moves for leave to file a third amended counterclaim to add a count for breach of contract and bad faith related to Mid-Continent's denial of Sundown's Hurricane Rita clean-up cost claim. On July 19, 2007 Mid-Continent informed Sundown that it had completed its investigation and had decided to deny Sundown's Hurricane Rita claim. On October 3, 2007 Sundown filed the instant motion for leave to amend.

II

The court turns first to Sundown's objections to the magistrate judge's orders.

A

The standard of review for a decision of a magistrate judge in a nondispositive matter is governed by Fed. R. Civ. P. 72(a), which provides that "[t]he district judge in the case must . . . modify or set aside any part of the order that is clearly erroneous or is contrary to law." *Id.* "'The "clearly erroneous" standard applies to the factual components of the magistrate judge's decision.'" *Lahr v. Fulbright & Jaworski, L.L.P.*, 164 F.R.D. 204, 208 (N.D. Tex. 1996) (Fitzwater, J.) (quoting *Smith v. Smith*, 154 F.R.D. 661, 665 (N.D. Tex. 1994) (Fitzwater, J.)). "'The district court may not disturb a factual finding of the magistrate judge unless, although there is evidence to support it, the reviewing court is left with the definite and firm conviction that a mistake has been committed.'" *Id.* (quoting *Smith,* 154 F.R.D. at 665) (internal

quotation marks omitted). "'If a magistrate judge's account of the evidence is plausible in light of the record viewed in its entirety, a district judge may not reverse it.'" *Id.* (quoting *Smith*, 154 F.R.D. at 665) (internal quotation marks omitted). The legal conclusions of the magistrate judge are reviewable *de novo*, and the district judge "reverses if the magistrate judge erred in some respect in [his] legal conclusions." *Id.* "[T]he abuse of discretion standard governs review of 'that vast area of . . . choice that remains to the [magistrate judge] who has properly applied the law to fact findings that are not clearly erroneous."' *Id.* (quoting *Smith*, 154 F.R.D. at 665) (alteration in original).

B

1

Sundown first raises certain general objections to the Compel Order.[2] It argues that, according to the language of the order, the magistrate judge ruled on the motion to compel simply by comparing the withheld and redacted documents to Mid-Continent's privilege log, and that he therefore failed to consider Sundown's

---

[2]The order states in its entirety:

> The Court has reviewed all documents submitted in camera, comparing each to the privilege log. The Court finds that the documents were withheld and redacted properly, and each document is privileged as asserted by Mid-Continent Casualty Company. Accordingly, Defendants' April 25, 2007 motion to compel production of documents is denied.

legal arguments and appendix submitted under seal.  Sundown also posits that, because the magistrate judge did not grant Sundown's motion to submit the appendix under seal until July 30, 2007—14 days after ruling on the motion to compel—there is no evidence that the magistrate judge in fact considered the sealed documents before ruling on the motion to compel.  Sundown contends that these errors warrant *de novo* review for failure to apply the law to the facts, or, alternatively, for review under an "abuse of discretion" standard for deciding the motion by simply comparing the documents to a privilege log, without considering the legal arguments.

2

Rule 72(a) requires that a magistrate judge deciding a nondispositive matter "must promptly conduct the required proceedings and, when appropriate, issue a written order stating the decision." *Id.*  The Rule does not require that, when a written order is issued, the order specify the legal arguments and documents on which the magistrate judge relied in reaching his decision.  Sundown cannot therefore infer, based on the brevity of the order alone, that the judge did not consider the parties' legal arguments, or that the magistrate judge reached his decision solely by comparing the documents at issue to Mid-Continent's privilege log.  In fact, the magistrate judge's July 30 order *granting* Sundown's motion to file the supplemental appendix to its reply provides the opposite inference: the magistrate judge considered

Sundown's arguments and documents in reaching his decision.

Nor can Sundown establish reversible error based on the timing of the magistrate judge's order granting Sundown's motion to submit its appendix under seal. It is not uncommon for administrative rulings of the type involved here—directing the clerk of court to file a document under seal—to be entered after the court considered the submitted document *in camera*. For example, it is not unusual for this court, after reviewing documents *in camera*, to direct that the documents be filed by the clerk under seal. This way, the documents are preserved in the form presented and are available for appellate review. The act of ordering them filed under seal is a ministerial one for purposes of preserving the record, although the document review actually took place before the court ordered the documents filed under seal. The court therefore overrules Sundown's general objections.

C

The court now considers Sundown's individual objections to each category of documents at issue in the motion to compel.

1

The court first addresses an overarching issue that applies to each objection. Sundown argues that "[g]iven the brevity of the order, the only way Sundown could demonstrate those errors was to interpolate all possible bases for the magistrate judge's conclusions and to appeal those it believed to be erroneous." Ds.

Reply 3. Accordingly, for each category of documents, Sundown provides various possible bases for the decision, specifies for each the corresponding standard of review, and argues why under the relevant standard reversal is warranted. The court notes that although the Compel Order does not provide a detailed (or any) account of its reasoning, the order does conclude that the documents are privileged "as asserted by Mid-Continent Casualty Company." In other words, fairly interpreted, the order reflects that the magistrate judge concluded that the documents were privileged for the reasons and arguments proffered by Mid-Continent. Therefore, to prevail on its objections, Sundown must address Mid-Continent's explanations for withholding or redacting the documents at issue, because they provide the apparent bases for the magistrate judge's ruling. This requirement follows from this court's oft-repeated rule that "at a minimum, the [objecting] party must identify the ruling being challenged, specify the standard of review, and explain why the decision in question is reversible under that standard." *Librado v. M.S. Carriers*, Inc., 2004 WL 583602, at *4, 2004 U.S. Dist. LEXIS 10817, at *13 (N.D. Tex. Mar. 23, 2004) (Fitzwater, J.).

2

The document at issue in category 1 concerns an email chain between Mid-Continent and Paul Preston, Esquire ("Preston"), an attorney whom Mid-Continent had hired to defend Sundown in the

- 7 -

Underlying Litigation. The third amended privilege log describes it as "e-mails between Haltom and Paul Preston regarding retention of the Preston Law Firm to assist in seeking reimbursement for clean-up costs," and that the document is being withheld on the ground that it was prepared in "anticipation of litigation" and as an "attorney-client communication."

Sundown maintains that, to the extent the Compel Order implies that Mid-Continent was entitled to assert the attorney-client privilege against Sundown as to these emails, the decision is based on legal error and must be reviewed *de novo*. Sundown supports this argument based on the principle that an insurer cannot invoke the attorney-client privilege against the insured when the same attorney represents both parties. Sundown then contends that, to the extent the Compel Order implies a factual finding that the subject matter of the emails did not constitute a retainer agreement (thus placing it outside the bounds of attorney-client protection), this amounts to factual error and should be reviewed under the clearly erroneous standard. Finally, Sundown posits that, to the extent the Compel Order implies a finding that the attorney-client privilege was not waived by Sundown's production of other communications between the same parties, the decision was erroneous and reviewable under the abuse of discretion standard.

As the court has noted, for Sundown to prevail on its objection, it must address the grounds for protection that Mid-

Continent asserted.  In its briefing in opposition to Sundown's motion to compel, Mid-Continent raised two grounds to support its rights not to produce the documents in category 1: the attorney-client privilege and the work product doctrine.  As the court has interpreted the Compel Order, these were the grounds on which the magistrate judge relied when deciding not to compel Mid-Continent to produce the document at issue.  Notably, although Sundown advances various arguments to demonstrate that the documents are not protected by the attorney-client privilege, it does not argue that the application of the work product doctrine is erroneous.[3] Mid-Continent asserted two grounds for protecting the document in question.  Sundown has failed to challenge one of these grounds.[4]

---

[3]Although the work product doctrine is not a "privilege" as such, the court interprets the term "privileged" in the Compel Order as referring both to the attorney-client privilege and to the work product doctrine.  This construction is supported by the fact that courts frequently refer to the work product doctrine as a "privilege."  *See, e.g., In re Grand Jury Subpoena*, 419 F.3d 329, 333 n.3, 335, and 336 (5th Cir. 2005) (referring in several instances to the "attorney-client and work product privileges" and "work product privilege").  Moreover, there is no indication in the record that the magistrate judge meant to refer in his ruling only to the attorney-client privilege and not to the work product doctrine, or that Sundown interpreted the Compel Order to be limited in this respect.  Sundown, in fact, belatedly addressed the application of the work product doctrine in reply.  *See infra* note 4.

[4]Although Sundown includes in its argument caption an objection to application of the attorney-client privilege, and, parenthetically, any other privilege, its arguments concern only error in the application of the attorney-client privilege and do not address a basis for error in the application of the work product doctrine.  Sundown addresses this possibility only in its reply, arguing that it would have been an outrageous conflict of

Because Sundown has not shown legal or factual error as to the application of work product immunity, the court affirms the magistrate judge's ruling as to the category 1 documents.

3

Category 2 documents concern correspondence between Mid-Continent and its reinsurers. Mid-Continent declined to produce these documents based on work product immunity. Sundown clarifies in its reply that it now seeks production of only one document—MC-06790-06791—because the other document at issue has been produced in response to a subpoena issued to a reinsurer in Connecticut. Sundown contends that MC-06790-06791 appears to be a follow-up to the document produced under the Connecticut subpoena, and that it is not related to the declaratory judgment action but was rather part of the handling of the Underlying Litigation. Sundown relies on a ruling by a magistrate judge in Connecticut holding that documents created in the ordinary course of business, despite being

---

interest for Mid-Continent to have contacted Preston (Sundown's previous attorney) for the purposes of suing Sundown, that this demonstrates bad faith, and that Sundown would therefore have a "substantial need" for the document. By this argument Sundown appears to concede that the document is protected by the work product doctrine, but that it is nevertheless entitled to production based on substantial need.

    The court declines to consider this argument for two reasons. First, Sundown did not argue "substantial need" in its motion to compel; this argument cannot therefore provide a basis for reversing the magistrate judge's decision. Second, this court has repeatedly held that it will not consider arguments raised for the first time in reply. See, e.g., *Xtria LLC v. Tracking Sys., Inc.*, 2007 WL 2719884, at *4 (N.D. Tex. Sept. 18, 2007)(Fitzwater, J.) (discussing precedent and rationale for rule).

created after the date Mid-Continent anticipated litigation, are not protected work product. Sundown thus contends that if the magistrate judge in the present case made a factual finding that MC-06790-06791 concerned the contemplated declaratory judgment action, that finding is clearly erroneous.

This court will not disturb a magistrate judge's factual finding unless the court is left with a "definite and firm conviction that a mistake has been committed." The court has reviewed the document to determine whether it was created in the ordinary course of business or relates to the declaratory judgment action. Although the court cannot say that the document clearly belongs in either category, it concludes that the magistrate judge's factual determination that the document was created in anticipation of litigation "is plausible in light of the record viewed in its entirety" and therefore that the magistrate judge's ruling is not clearly erroneous.

4

Category 3 documents concern communications between Mid-Continent and various attorneys Mid-Continent hired to investigate Sundown's Hurricane Rita claim. Mid-Continent declined to produce these documents based on the attorney-client privilege and work product immunity.

Sundown contends that, to the extent the Compel Order implies a legal conclusion that correspondence between Mid-Continent and an

attorney who is acting in the capacity of an investigator is subject to attorney-client privilege, it is erroneous and subject to *de novo* review. In support, Sundown cites evidence suggesting that the attorneys in question were solely operating as investigators. Further, to the extent the magistrate judge made a factual determination that these persons were acting in their capacity as attorneys rather than as investigators, Sundown contends the magistrate judge's finding is clearly erroneous. Finally, Sundown argues that, even if the magistrate judge applied the appropriate legal standard, it was an abuse of discretion to permit Mid-Continent to invoke the attorney-client privilege against Sundown after Mid-Continent had repeatedly represented to Sundown that the attorneys were merely conducting an investigation.

Sundown relates its various category 3 objections to the application of the attorney-client privilege. Mid-Continent, however, primarily relied on the work-product doctrine as the basis for protecting these documents from disclosure. P. Resp. Mot. Compel 10-12. Sundown does not explicitly argue that the magistrate judge erred in applying the work product doctrine. Although Sundown does contend that category 3 documents do not concern the declaratory judgment action, Sundown appears to relate this contention to its arguments related to the application of the attorney-client privilege, not the work product doctrine. Assuming *arguendo* that Sundown has properly objected to application of the

work product doctrine on the basis that the investigations could not have been made in anticipation of litigation (because they concerned the Rita claim, not Hurricane Katrina), the court is unable to say that the magistrate judge committed clear error. Upon review of the documents in question, the court holds, in light of the record viewed in its entirety, that it is plausible that the documents were prepared in anticipation of litigation.[5]

III

The court now addresses Sundown's objections to the Surreply Order, in which the magistrate judge granted Mid-Continent leave to file a surreply to Sundown's motion to compel, without permitting Sundown to reply.

A

Sundown argues that because the magistrate judge granted this motion on the day he denied Sundown's motion to compel, Sundown did not have an opportunity to reply to the surreply, despite requesting this relief in its opposition brief. Sundown maintains that the magistrate judge abused his discretion by giving Mid-Continent an unfair advantage. Sundown contends specifically that Mid-Continent was able to introduce new argument in its surreply,

---

[5]Sundown appears to assume that investigations regarding the Hurricane Rita claim cannot *per se* have been conducted in anticipation of litigation, because the declaratory action did not include the Hurricane Rita Claim. Upon review of the documents at issue, the court finds plausible that the Rita investigations were related to the declaratory action that Mid-Continent asserted.

to which Sundown had no opportunity to reply, and that Mid-Continent was able to alter the descriptions of the contested documents that it had set out in its second amended privilege log.

B

Preliminarily, the court notes that although in opposing Mid-Continent's motion for leave to file a surreply, Sundown requested permission to respond if such leave was granted, it did not explicitly move for leave to file a responsive pleading. As Mid-Continent notes, this court has held that "N.D. Tex. Civ. R. 7.1 does not provide that it is error to exclude from review a validly filed responsive pleading in support of a motion when determining that motion. Rather, the Rule set outs requirements on parties for motion practice in this district." *FDIC v. Todd & Hughes Constr. Corp.*, 2006 WL 2128667, at \*2 (N.D. Tex. July 27, 2006) (Fitzwater, J.), *aff'd on other grounds sub nom. Sobranes Recovery Pool I, LLC v. Todd & Hughes Constr. Corp.*, ___ F.3d ___, 2007 WL 4181680 (5th Cir. Nov 28, 2007). *A fortiori*, in the circumstances presented here, the magistrate judge did not abuse his discretion by excluding from review a pleading *potentially to be filed*.

Moreover, the magistrate judge did not abuse his discretion by deciding the motion based on four rounds of briefing rather than five. There is no indication in the record that the magistrate judge failed to consider fairly the arguments presented or that the content of Mid-Continent's surreply—unrefuted by a further reply

from Sundown——led the magistrate judge into reversible error.

Accordingly, the Compel Order is affirmed.

IV

The court now turns to Sundown's motion for leave to file a third amended counterclaim.

A

The scheduling order imposed a February 1, 2007 deadline for filing motions for leave to amend pleadings. Sundown did not file its motion for leave to amend until October 3, 2007. When, as here, the deadline to amend pleadings has expired, the court must first determine whether to modify the scheduling order under the standards of Rule 16(b)(4). *See S&W Enters., L.L.C. v. SouthTrust Bank of Ala., N.A.*, 315 F.3d 533, 536 (5th Cir. 2003); *Am. Tourmaline Fields v. Int'l Paper Co.*, 1998 WL 874825, at *1 (N.D. Tex. Dec. 7, 1998) (Fitzwater, J.). Rule 16(b)(4) provides that "[a] schedule may be modified only for good cause and with the judge's consent." The Rule requires that a party who seeks to modify a scheduling order must make the showing of good cause. *See Reliance Ins. Co. v. La. Land & Exploration Co.*, 110 F.3d 253, 257 (5th Cir. 1997).

In *S&W Enterprises* the Fifth Circuit applied the four-part test of *Reliance Insurance* to decide whether an untimely motion for leave to amend should be granted. Under *S&W Enterprises* this court must consider "'(1) the explanation for the failure to [timely move

for leave to amend]; (2) the importance of the [amendment]; (3) potential prejudice in allowing the [amendment]; and (4) the availability of a continuance to cure such prejudice.'" *S&W Enters.*, 315 F.3d at 536 (quoting *Reliance Ins.*, 110 F.3d at 257).

If Sundown meets the requirements of Rule 16(b)(4), the court must next determine whether to grant leave to amend under the more liberal standard of Rule 15(a). *S&W Enters.*, 315 F.3d at 536; *Am. Tourmaline Fields*, 1998 WL 874825, at *1. Rule 15(a)(2) provides that "[t]he court should freely give leave when justice so requires." Granting leave to amend, however, "is by no means automatic." *Wimm v. Jack Eckerd Corp.*, 3 F.3d 137, 139 (5th Cir. 1993) (quoting *Addington v. Farmer's Elevator Mut. Ins. Co.*, 650 F.2d 663, 666 (5th Cir. Unit A July 1981)). The district court may consider factors such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party, and futility of amendment. *Id.* (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

B

1

Concerning the first *S&W Enterprises* factor, the court concludes that Sundown has offered a satisfactory explanation for not seeking leave to file the amended counterclaim before the deadline. Sundown could not have moved before the deadline for

leave to amend its counterclaim to include a count based on the denial of the Rita claim, because Mid-Continent did not inform Sundown that it was denying the Hurricane Rita claim until July 19, 2007, almost six months after the deadline.  Notwithstanding this fact, Mid-Continent contends that Sundown inexcusably delayed filing the Hurricane Rita claim until almost ten months after Hurricane Rita made landfall—whereas the Hurricane Katrina claim was filed almost immediately after landfall—and then failed to move for leave to amend until three months after the denial of the Hurricane Rita claim.

The court concludes that these additional delays are explained by the interrelated nature of the hurricanes and Sundown's explanation that it was necessary to submit the denial of the Hurricane Rita claim for expert review in preparing the proposed amended counterclaim.  Given the difficulties in disentangling the consequences and costs associated with the two hurricanes, and Sundown's stated need to submit the Hurricane Rita claim denial for expert review before seeking leave to amend, the court finds that Sundown's delays are satisfactorily explained.

2

The court considers next the importance of the amendment to Sundown.  Mid-Continent argues that Hurricane Rita is already part of Sundown's counterclaim, and that the amended counterclaim therefore amounts to nothing more than a factual update.  Sundown

maintains, however, that the amendment is important because it includes an additional count for breach of contract and bad faith, not simply a factual update. The court agrees. Sundown's existing Hurricane Rita counterclaim is based only on Mid-Continent's alleged delays in investigating and processing the Hurricane Rita claim. The denial of the claim serves as the basis for adding a new, discrete count to the breach of contract claim. The court therefore holds that the proposed amendment is sufficiently important to warrant modifying the scheduling order.

3

The court considers in tandem the third and fourth factors: the potential for prejudice and the availability of a continuance to cure any prejudice.

Mid-Continent contends that Sundown will likely seek to re-depose some or all of the witnesses related to the Hurricane Rita claim or possibly seek additional discovery, and that this could cause delay in reaching the case for trial. After Sundown filed this motion, the parties filed a joint motion for a continuance of the trial setting and an extension of all remaining deadlines. In a December 10, 2007 order, the court granted the motion. Because all deadlines have been extended by at least 90 days, the court concludes that the potential for prejudice is minimal, and that the third and fourth factors do not weigh against modifying the scheduling order to permit Sundown to amend its counterclaim.

Accordingly, assessing the four factors together, the court holds that Sundown's motion for leave should not be denied on the basis that it is untimely under the scheduling order.

C

The court next evaluates under the Rule 15(a)(2) standard whether leave to amend should be granted.

As noted, the Rule 15(a)(2) standard applies once Sundown satisfies the good cause standard of Rule 16(b)(4). *S&W Enters.*, 315 F.3d at 536. Mid-Continent limits its argument to the Rule 16(b)(4) factors, and it does not address any of the factors that weigh against granting leave under Rule 15(a)(2). Because the court is unable to find under the more liberal Rule 15(a)(2) standard a sufficient basis to deny Sundown leave to amend, it concludes that such leave should be granted.

\* \* \*

Accordingly, for the reasons stated, the court affirms the magistrate judge's July 16, 2007 orders denying Sundown's motion to compel and granting Mid-Continent's motion to file a surreply. The court grants Sundown's motion for leave to file a third amended counterclaim. Sundown must file the third amended counterclaim—electronically or on paper—within five business days

of the date this memorandum opinion and order is filed.

**SO ORDERED.**

January 8, 2008.

                                              SIDNEY A. FITZWATER
                                              CHIEF JUDGE