```
             IN THE UNITED STATES DISTRICT COURT
             FOR THE NORTHERN DISTRICT OF TEXAS
                       DALLAS DIVISION
```

| | |
|---|---|
| MID-CONTINENT CASUALTY COMPANY, | § <br> § <br> § Civil Action No. 3:06-CV-1576-D |
| Plaintiff-counterdefendant, | §  consolidated with <br> § Civil Action No. 3:06-CV-1578-D <br> § |
| VS. | § <br> § |
| ELAND ENERGY, INC., et al., | § <br> § |
| Defendants-counterplaintiffs. | § <br> § |

## MEMORANDUM OPINION AND ORDER

In *Mid-Continent Casualty Co. v. Eland Energy, Inc.*, Civil Action No. 3:06-CV-1576-D (N.D. Tex. Oct. 22, 2009) (Fitzwater, C.J.) ("*Mid-Continent II*"),[1] the court granted plaintiff-counterdefendant Mid-Continent Casualty Co.'s ("Mid-Continent's") April 29, 2009 supplemental motion for partial summary judgment. It dismissed with prejudice the counterclaims asserted in the fourth amended counterclaim of defendants-counterplaintiffs Eland Energy, Inc. and Sundown Energy LP (collectively, "Sundown") for

---

[1] The court filed *Mid-Continent II* under seal because the opinion might disclose materials submitted under seal during briefing. In a separate order, the court directed the parties to identify parts of the opinion that they requested remain sealed. In a joint response, the parties advised that no part of *Mid-Continent II* should remain sealed, but they disagreed about whether the opinion should be unsealed before the court issued its final decision. In an order filed November 20, 2009, the court directed that the opinion remain sealed pending a final ruling. Accordingly, in view of today's memorandum opinion and order, the court is separately ordering that *Mid-Continent II* be unsealed, and it is discussing in this opinion the contents of *Mid-Continent II*.

breach of contract, violation of Tex. Ins. Code Ann. § 541.060(a)(2)(A) (Vernon 2009), and breach of a *Stowers* duty[2] based on Mid-Continent's failure to participate in and fund the *Blanchard* settlement.  But because the court relied on waiver analysis that Mid-Continent had not raised in support of its motion, the court granted Sundown leave to file a supplemental brief that addressed this basis for granting summary judgment. Having considered Sundown's supplemental briefing and Mid-Continent's response, the court adheres to its ruling, based on the analysis of *Mid-Continent II* and of this memorandum opinion and order.

I

The background facts and procedural history of this case are set out in *Mid-Continent Casualty Co. v. Eland Energy, Inc.*, 2009 WL 3074618, at *1-*3 (N.D. Tex. Mar. 30, 2009) (Fitzwater, C.J.) ("*Mid-Continent I*"), and *Mid-Continent II*, slip op. at 2-5, and need not be repeated at length.  In *Mid-Continent II* the court granted summary judgment dismissing Sundown's breach of contract counterclaim and, in turn, its counterclaims for breach of Tex. Ins. Code Ann. § 541.060(a)(2)(A) and breach of the duty of good faith under *Stowers*.  The court based its decision, in part, on the conclusion that Mid-Continent could waive the conditions precedent

---

[2]*G.A. Stowers Furniture Co. v. Am. Indem. Co.*, 15 S.W.2d 544 (Tex. Comm'n App. 1929, holding approved).

to its duty to pay and thereby discharge its obligations under the Umbrella Policy by indemnifying Sundown for damages and cleanup costs that Sundown did not yet owe:

> [T]he court holds that Mid-Continent could waive the conditions precedent intended to benefit it, tender the limits of the Umbrella Policy to Sundown, and terminate further obligations to Sundown, including funding the *Blanchard* settlement. Because Mid-Continent could do so, a reasonable jury could not find that it breached the Umbrella Policy. Mid-Continent is entitled to summary judgment dismissing Sundown's breach of contract counterclaim based on Mid-Continent's failure to participate in and fund the *Blanchard* settlement.

*Mid-Continent II*, slip op. at 29-30. Because the court relied on waiver analysis that Mid-Continent had not presented in its motion, the court granted Sundown leave to file a supplemental brief. *Id.* at 30. In its supplemental brief, Sundown maintains that there are factual and legal reasons that preclude the court from granting summary judgment based on waiver. Mid-Continent responds that the court correctly granted summary judgment.

II

Sundown contends that, as a factual matter, Mid-Continent did not intentionally waive any conditions precedent.

A

The court addresses as a threshold matter whether, as Sundown maintains, the court legally erred by basing summary judgment on waiver. Sundown contends that Mid-Continent never met its initial

- 3 -

burden of demonstrating that a waiver was intended.  The court understands Sundown's argument to be that the court improperly shifted the burden of proof and production to Sundown despite Mid-Continent's failure to demonstrate that it intended to waive conditions precedent to payment under the Umbrella Policy.  The court disagrees that it erred procedurally.[3]

In granting summary judgment based on waiver, the court pointed out that, except when attempting to terminate a duty to defend, an insurer can waive rights and policy provisions that are intended for its benefit.  *Mid-Continent II*, slip op. at 28.  It also noted that, under Texas law, a party may waive its rights by, *inter alia*, intentional conduct inconsistent with that right.  *Id.* at 27.  The court relied on undisputed evidence presented by Mid-Continent that it had intentionally made payments under the Primary Policy and the Umbrella Policy that, as Sundown itself maintained, exceeded what Sundown had spent on mandated cleanup costs as of August 18, 2006 (and, in turn, what Mid-Continent owed Sundown).  *See id.* at 26-27 ("But if Mid-Continent was entitled to tender the policy limits regardless of whether Sundown was as yet legally obligated to pay $6 million in covered damages and/or cleanup costs, Mid-Continent is entitled to summary judgment because it

---

[3]Although the court disagrees with Sundown's contention, it recognizes that § VI(B) of *Mid-Continent II* could perhaps have included the analysis contained in this opinion and thereby have made clear that the court's decision was procedurally sound.

exhausted the Umbrella Policy limits before Sundown demanded that Mid-Continent participate in and fund the *Blanchard* settlement."); *id.* at 28 ("The question becomes whether Mid-Continent could waive the conditions precedent on which Sundown relies and thereby discharge its policy obligations by indemnifying Sundown for damages and cleanup costs that Sundown did not yet owe."). Therefore, based on undisputed evidence that, on August 18, 2006, Mid-Continent had engaged in intentional conduct that was inconsistent with its right *not* to pay Sundown the total proceeds of the Umbrella Policy, the court raised *sua sponte* that Mid-Continent was entitled to summary judgment based on waiver.

The court did not improperly shift the summary judgment burden to Sundown. It relied on undisputed evidence in the summary judgment record that Mid-Continent had engaged in conduct (the payment of the Umbrella Policy limits) that was clearly inconsistent with its right to insist on compliance with various conditions precedent before making payment.[4] Based on this undisputed evidence, the court concluded that Mid-Continent thereby waived the conditions precedent to payment. The court

---

[4]Interestingly, Sundown asserts in its supplemental brief that "Mid-Continent intended to exhaust its policy on *Hurricane Katrina cleanup costs* in order to wash its hands of Sundown." Ds. Supp. Br. 2 (emphasis in original). That is the point of the court's waiver analysis: it is undisputed that Mid-Continent had the right to insist on compliance with conditions precedent before paying Sundown the limits of the Umbrella Policy, and it acted inconsistently with that known right by tendering the policy limits before Sundown's cleanup costs had met or exceeded $6 million.

- 5 -

simply raised a ground for summary judgment that was apparent from undisputed evidence contained in the record. By raising waiver as a ground for summary judgment and affording Sundown an opportunity to respond, it did not improperly shift the burden to Sundown.

B

Sundown maintains that the court's waiver analysis[5] lacks a factual basis. It contends first that the $5 million payment was intended to cover Hurricane Katrina costs only, not Hurricane Rita.

Unless Sundown is making this argument because it is concerned that the court's reasoning in *Mid-Continent II* would affect Sundown's Hurricane Rita claim, which it does not, *see infra* § III, it is not apparent why this contention is material to the court's waiver analysis. To the extent Sundown is contending that Mid-Continent's stated intention to exhaust policy limits on Hurricane Katrina cleanup costs undermines the conclusion that it waived all conditions precedent to payment, the court disagrees for the reasons explained *supra* at § II(A).

C

Sundown next contends that testimony from Kirby Pancoast ("Pancoast"), Mid-Continent's Senior Vice-President of Claims, indicates that Mid-Continent expected Sundown to repay Mid-

---

[5]Sundown actually refers to this as a waiver "finding." Ds. Supp. Br. 2. This connotes a factual finding, but the court did not make a factual finding about waiver in *Mid-Continent II*. As explained above, the court relied on undisputed evidence.

Continent if any part of the $6 million that Mid-Continent tendered was in excess of covered cleanup claims. Sundown bases this contention on Pancoast's deposition testimony. The premise of this argument is that Mid-Continent did not intend to waive conditions precedent by its tender of policy limits because the tender was not unconditional. The court disagrees.

During the deposition, Pancoast was asked what his position on the claim would be if he learned that Sundown's total cleanup costs did not exceed policy limits. Pancoast responded that he would "suspect [Sundown] would do the right thing and return to [Mid-Continent] the amount of the policy proceeds that [it] received that were not utilized to expend—that were not expended for covered claims under the policy." Ds. App. 16. A reasonable jury could only find that, rather than indicate Mid-Continent's intent to seek repayment, Pancoast was responding to a hypothetical question in a deposition and expressing his personal view about Sundown's business ethics. Against this single answer is a mountain of evidence establishing waiver: Mid-Continent intentionally decided to tender the Umbrella Policy limits before Sundown submitted bills showing that it had incurred $6 million in cleanup costs; Mid-Continent believed Sundown had covered claims that would exceed $6 million; Mid-Continent's payment was made

intentionally; and Mid-Continent never sought reimbursement or reserved the right to seek reimbursement.[6]

D

Sundown posits next that there is evidence that Mid-Continent considered paying Sundown complete policy limits of $7 million to obtain a policyholder's release, but it could not obtain the necessary consent from its reinsurers. According to Sundown, because Mid-Continent had told its reinsurers that it would carry the defense costs of the underlying litigation on the Primary Policy, even after it had exhausted the policy limits, the only way it could terminate the defense without arousing the reinsurers' suspicions was to pay out the limits of the Umbrella Policy on the pretext that these limits would also be exhausted by covered Hurricane Katrina costs alone. Sundown maintains that the facts that support this argument contradict the conclusion that Mid-Continent intended to waive the conditions precedent.

The court concludes that this argument and the evidence on which it relies do not affect the court's waiver analysis. Regardless of Mid-Continent's position vis-a-vis its reinsurers, or its reinsurers' position, Mid-Continent paid the limits of the Umbrella Policy at a time when, as even Sundown contends, it was

---

[6]Mid-Continent did indicate, however, that it would seek reimbursement for legal fees paid under the commercial general liability policy, i.e., Primary Policy, after that policy had been exhausted. *See* Ds. App. 69.

- 8 -

not yet legally obligated to pay $6 million in covered damages and/or cleanup costs. Mid-Continent engaged in intentional conduct inconsistent with the right to insist on compliance with conditions precedent to paying Sundown the limits of the Umbrella Policy, and it acted inconsistently with that known right by tendering the policy limits before Sundown's cleanup costs met or exceeded $6 million.

III

Sundown asks the court to clarify whether its waiver holding affects Sundown's Hurricane Rita claim.

The court's opinion in *Mid-Continent II* was intended to address Sundown's counterclaims arising from Mid-Continent's refusal to participate in or fund the settlement of the *Blanchard* lawsuit. *See, e.g., Mid-Continent II*, slip op. at 1-2 ("Following *Mid-Continent I*, Sundown filed a fourth amended counterclaim in which it asserts counterclaims . . . arising from Mid-Continent's refusal to participate in or fund the settlement of the *Blanchard* lawsuit. Mid-Continent now moves for partial summary judgment dismissing these counterclaims."). Moreover, in *Mid-Continent I*, both parties moved for summary judgment on the question whether the spill caused by Hurricane Rita was separate from the spill caused by Hurricane Katrina, thus triggering additional coverage under the Primary Policy. *See Mid-Continent I*, 2009 WL 3074618, at *20. The court held that it could not determine whether the Hurricane Rita

- 9 -

claim constituted a second "Pollution Incident," and denied summary judgment to both parties. *Id*. The court did not intend for its opinion in *Mid-Continent II* to address Sundown's Hurricane Rita claim.

IV

Sundown contends that, if Mid-Continent waived anything when it tendered the Umbrella Policy limits, the waiver relates only to Hurricane Katrina cleanup costs. It posits that included in this payment were costs that Mid-Continent was not legally obligated to pay and that it necessarily made as a volunteer. Sundown therefore reasons that Mid-Continent cannot be subrogated in Sundown's OPA Fund claims for these amounts. It seeks relief related to Mid-Continent's intervention in Sundown's OPA Fund claims.

To the extent that Sundown offers this analysis to refute the court's conclusion that Mid-Continent could waive conditions precedent to payment, the court rejects it. If Sundown is relying on it for any other purpose, the court declines to decide a question that exceeds the scope of the motion it is now deciding. *Cf., e.g., Ondova Ltd. v. Manila Indus., Inc.*, 513 F.Supp.2d 762, 776 (N.D. Tex. 2007) (Fitzwater, J.) (holding that court cannot grant declaratory judgment based on hypothetical situation not currently essential to resolution of actual pending controversy).

V

Sundown advances a number of arguments to support the premise that the court's waiver analysis should be abrogated because it is likely to leave insureds and excess insurers vulnerable to abusive manipulation of claims when cleanup claims are combined with third-party liability claims.[7]

The court need not analyze these arguments specifically because there are at least three overarching reasons to reject them.[8]  First, the fact that an insurer can waive some contractual

---

[7]Sundown maintains that an insurer's ability to waive conditions precedent to payment would cause "confusion, disruption, and disputes" in states where claimants could sue insurers directly. Ds. Br. 28. But it does not explain why this is so; the court finds no reason why this procedure, available in some states, would affect its waiver analysis.

[8]In one of its arguments, Sundown contends that allowing an insurer to waive conditions precedent to payment could endanger the insured's rights with insurers offering coverage in excess of the waiving insurer's. It points to the provision in the Umbrella Policy, "When Loss Payable," that states that Mid-Continent is not obligated to make payments until Sundown or its underlying insurer is first obligated to pay the complete amount of the retained limit. *See* Ds. App. 162.
But Sundown has failed to establish why an insurer's ability to waive conditions precedent to payment would interfere with an insured's ability to collect against an insurer who is higher in the insurance tower. The events of this case illustrate why it would not. Mid-Continent became legally obligated to pay roughly $5.7 million under the Umbrella Policy and Primary Policy. Mid-Continent tendered the limits of both policies. After that, Sundown became liable for $2 million more by reason of the *Blanchard* settlement. Sundown's liability thereby exceeded the combined policy limits. If the retained limit of an excess policy were $6 million (the combined limits of both underlying policies), and the excess policy was governed (as Sundown suggests) by the same "When Loss Payable" clause, that policy would then be triggered because Sundown had become legally liable for more than

rights that benefit it—here, conditions precedent—and thereby secure other benefits is not a reason to reject waiver. If it were, a contract that imposed a condition precedent on an insured would be converted into one that imposed a corollary implied obligation on the insurer to insist on compliance with the condition precedent.

Second, parties to contracts routinely order their affairs to take advantage of rights and options that the law allows. Such conduct is contemplated and expected.

Third, as Mid-Continent points out, insurers in Texas are regulated by the Texas Insurance Code. Among the Code's provisions are requirements that insurers not engage in unfair claim settlement practices. *See, e.g.,* Tex. Ins. Code Ann. §§ 542.003 and 541.060 (Vernon 2009). And Texas common law imposes on insurers a duty of good faith and fair dealing. Sundown's concerns about an insurer's invocation of waiver rights to abusively manipulate claims are answered by statutory and common law prohibitions against such conduct.

VI

Sundown also contends that the court's waiver analysis violates the traditional rule of construction whereby ambiguities

---

$6 million. And if Sundown's expenses had instead remained at $5.7 million, Sundown's excess policy would not have been triggered anyway, regardless of whether a lower-level umbrella policy insurer had paid its policy limits, because its loss did not exceed $6 million.

in an insurance contract are construed against the insurer and in favor of coverage. The court disagrees. The court's waiver analysis centers on Mid-Continent's conduct and its right to waive contractual rights that benefit it. With respect to waiver, the court did not interpret the Umbrella Policy or conclude that it was ambiguous. And Sundown has pointed to no provision of the Umbrella Policy that could be construed to prohibit Mid-Continent's early payment of the Umbrella Policy limits.

VII

Finally, Sundown maintains that, assuming that Mid-Continent can utilize waiver to exhaust the Umbrella Policy limits and obtain summary judgment dismissing the breach of contract and *Stowers* counterclaims, Sundown can still bring a statutory bad faith claim for the *Blanchard* settlement and for inflated defense costs incurred in the *Blanchard* litigation. Specifically, Sundown asserts that it can still bring statutory bad faith claims for Mid-Continent's conduct outside the policies.

In *Mid-Continent II* the court addressed the portion of Sundown's counterclaim that asserted that Mid-Continent breached Tex. Ins. Code Ann. § 541.060(a)(2)(A) by failing to effectuate a fair settlement of the *Blanchard* case. *See Mid-Continent II*, slip op. at 30. The court noted that, in *Mid-Continent I*, it had held "that Mid-Continent had properly tendered the Primary Policy limits and therefore had no obligation to fund the *Blanchard* settlement."

*Mid-Continent II*, slip op. at 33 (citing *Mid-Continent I*, 2009 WL 3074618, at *39). It then noted that it was holding "that Mid-Continent's $5 million tender fulfilled its obligations under the Umbrella Policy," *id.*, and that in *Mid-Continent I* it had concluded that the parties were embroiled in this dispute by the time Sundown first demanded that Mid-Continent fund the *Blanchard* settlement, *id.* Because there was at the time a bona fide dispute about whether Mid-Continent had properly fulfilled its policy obligations, Mid-Continent had established beyond peradventure that there was a bona fide dispute about *Blanchard* coverage that entitled it to summary judgment. *Id.* at 33-34.

The court's holding in *Mid-Continent II* should be understood only to apply to Mid-Continent's refusal to participate in or fund the settlement of the *Blanchard* lawsuit. The court did not address whether a reasonable jury could find that Mid-Continent violated the Texas Insurance Code based on any other conduct, including by making an unfair settlement offer. The court held in *Mid-Continent I* that statutory liability under § 541.060 could be premised on conduct unrelated to the payment of claims. *Mid-Continent I*, 2009 WL 3074618, at *23-*24. This holding is unaffected by *Mid-Continent II*.

* * *

Accordingly, having afforded Sundown an opportunity to respond to the court's waiver analysis before granting partial summary judgment, the court now grants Mid-Continent's April 29, 2009 supplemental motion for partial summary judgment on the *Blanchard* claims.

**SO ORDERED.**

February 22, 2010.

                                      _____
SIDNEY A. FITZWATER
CHIEF JUDGE